Matthew Davis. Good morning, Your Honors. My name is Walter Mack, and I represent Defendant Appellant Matthew Davis. My request, or what I'm seeking, is a remand to the District Court to permit me to demonstrate the basis for our new trial motion. As Judge Pooler, you are aware, because you sat on the first panel on the appeal that was denied, the evidence in this case was characterized not only by the District Court judge, but also by this panel as either thin or weak. It depends entirely on the theory, which actually the District Court rejected its sentence that my client is an enforcer of a drug trafficking organization. This testimony, which was made by Mr. Parris in approximately seven months after the trial, is directly inconsistent with that theory. How is Parris's testimony inconsistent with Thomas' testimony? It is inconsistent directly, Your Honor, because Thomas' testimony and in fact strongly argued by the government in summation was that the reason that Mr. Davis was present was as an enforcer, a violent enforcer. And the Mr. Parris's testimony, which there is actually no indication of prior to the November testimony, was that he was there as a friend of the family. He was an individual who acted as a statesman. He was not there in any way as an enforcer for anyone. And basically, if in fact he was, as the government claimed, and which is really the only basis for the enforcer theory, that he was a member of that conspiracy, the only basis is this meeting, which is directly contradicted by Parris in his testimony before Judge Buchwald in November, seven months after the trial. And if you go through the 3500 material, I realize the district court considers our application to be meritless, no there, there, but it is not even clear whether or not the district court went through the 3500 material. When you go through the 3500 material, approximately 70 percent of it is in fact deleted or rejected. I asked, if only to get started, was to take a look and see if there is anything in that 3500 material that would presage or predict the testimony of Parris in November. Of course, Mr. Davis could have called Parris any time, right? Your Honor, if you're a defense lawyer in a situation, first of all, you have to recognize that the Parris 3500 material is in the Thomas 3500 material. And I realize I can't make that argument here. I did not try the case. But the point is, the only basis, and Your Honor, it gave me this question when I was here last, what conspiracy are we talking about? The only basis that we should have known, argues the government, that my client was not part of the conspiracy they were arguing is this one page on A473. And if the court looks at that, there's really no way you, first of all, it doesn't identify anyone, but it's clear that, you know, there's not a dispositive document. That is the basis that the government is arguing. The conspiracy, I mean, that was the question you asked me, Your Honor. What conspiracy was it? The question is whether we can really view this as new evidence. And the argument that we hear from the government that I'd like you to respond to is that the 3500 material made you aware that there was this witness to the extent that the material was redacted. There was never an application to see an unredacted version nor an application to interview or somehow speak to Paris. So what's your response to that as it's argued to show that this is not new evidence? My response to that, Your Honor, is if you're a defense lawyer in the middle or shortly before, this material was produced, I think, two weeks before the trial. Right. Not the eve of trial, two weeks before. I understand that, Your Honor. And the question I'm saying, you look at that. You realize he's an accomplice. They talk about all kinds of other sort of events that he might know about that bear no relationship. We don't know what's in the redacted version. The point is, how can my client know or his defense lawyers know that somewhere within there, there is the exact congruence? There's nothing in the 3500 material that would encourage a defense lawyer to ask for it. It's all negative. It is something where, one, are you going to be able to see that person and interview him, a government accomplice? No, but start with the fact that there was no request to see an unredacted copy. I don't know that to be true, but I have to assume it is, Your Honor. But the fact remains, if you're a defense lawyer and you get 50-some-odd pages of 3500 material, most of which is redacted, and what isn't redacted, first of all, none of the questions that, in our view, could or should have been asked, there's no record of what he said. Was he ever asked what was the reason that Matt Davis was there? No. How can you interview him? Harris was not present when Davis made the threat at the John Adams meeting, right? There's no reason to believe that, because he stepped away from that part of the meeting, right? Yes, he did, Your Honor, but recognize there are other indicia. If Lucy's enforcer is in your company, and you know this is a person that you should be afraid of and whatsoever, do you sit right behind him? Do you act in a way that the actual eavesdropping issues show, acting as a statesman, all things of that nature? Do you do that if you're sitting with him? If you haven't done anything wrong, you do. If you're part of the organization and you haven't done anything wrong that would direct his attention to you, you would. Your Honor, if this is the fearsome enforcer, which recognized Judge Forrest rejected, in the sentence situation, she finds that he's not an enforcer, is what it boils down to. So the fact remains here that... The jury didn't tag him with that murder. What? The jury didn't tag him with that murder. That doesn't mean he's not an enforcer. But Your Honor, this very witness, dealing with the very same meeting in which Thomas, whose credibility was certainly assaulted and questionable, is actually saying, hey, I'm comfortable, thank you for coming here. You know, he's a representative of the family. He's an individual... Which is exactly what Davis said and has always said, not at trial, I understand that, but at sentence, that he was not an enforcer. Judge Forrest found he was not an enforcer, at least in her sentencing situation. He's never found with a gun, any drugs, anything of that nature. And in fact, as the evidence demonstrates, Paris holds him out as the person who pulled everybody down, got things straightened out. He was a statesman. He was an individual who acted exactly as a family member would. That was not disclosed in any way in the 3500 material. You had no reason to call him as a witness. I'd be terrified to call him as a witness, based upon the 3500 material. This is a typical government cooperator, accomplice-type person who is... I would be terrified to call him. And in fact, that was the decision why he wasn't called, he wasn't interviewed. And believe me, finding, getting a defense lawyer or getting the judge to rule that you have a right to interview someone and you're in the middle of trial, you're not going to be in the middle of a trial. That was not disclosed in the 3500 material. That was disclosed. The government also argues, and I'd like to know your view on this. Yes, Your Honor. You cannot show that this new evidence is exculpatory because, as Judge Droney suggested, the witness was not involved in most of the inculpatory events of 2010. And the government argues he implicates, rather than exculpates, Davis in subsequent violence. What's your response to that? I don't understand it, Your Honor, because, first of all, he... Well, if not, you'll have rebuttal, and I assume they'll talk about it in their argument, but I just wanted to give you an opportunity to tell us what you thought. I would like to respond to that, Your Honor. This witness, Paris, first of all, in 2013, he doesn't even know my client's last name. It's Matt Lanue, some individual who basically knows nothing about his wife. And then, as time goes on, as seems to happen in law enforcement preparation, he becomes Matt Davis. But even under those circumstances, the only information that he has that he talks about before Judge Buchwald is that my client has nothing to do with the conspiracy that he's been accused of. He's not even in the conspiracy that's talked about in 2010 and what have you with Pudge. He's not even there. It's right in the testimony before Judge Buchwald. So, inculpatory, the only thing that is arguably inculpatory is, and we think Judge Forrest is wrong, yes, Matt Davis never denied being at the meeting in 2012. The point being, he's not there as an... First of all, there are family members there that have nothing to do... They're not co-conspirators. They're not part of it. And he was at that meeting. What he's denied is that he had any illegal purpose there, that he was not... That's not what Thomas testified to, though. Pardon me, Your Honor. That's not what Thomas testified to. There is no question that there is, in fact, diversion between what Thomas says, which we've always challenged on the basis of so... And we're saying that at the very least, at the very least, the information that Mr. Paris testified to before Judge Buchwald should have been available and present for the defense, should have been in the 3500 material. And under those circumstances, we don't know what's in the 3500 material. You cannot tell from Judge Forrest's opinion whether she reviewed the unredacted version or not. We asked... She's saying, hey, we're just fishing and what have you. I'm suggesting that at least I should be able to, under a protective order or what have you, is determine what was in the 3500 material. And anybody who reads it, I challenge anyone to say that what, in fact, Paris testified in November before Judge Buchwald, there is any inkling of that information in that 3500. Thank you, Counsel. You have reserved one minute for rebuttal. We'll hear from the government. May it please the Court. My name is Jessica Lonergan. I represent the United States here on appeal and I represented the United States below in front of the District Court. The testimony of Robert Paris is, one, not exculpatory. Two, it's not inconsistent with the testimony at Davis' trial. Three, as another panel of this Court has already found, there was ample other evidence to support his conviction separate and apart from the meeting that is the focus of this appeal and that testimony. And fourth, after the government informed the defendant that Paris had provided information to the government, the defendant did nothing to pursue calling Paris as a witness. Now, if I may expand on each of these points briefly. First, there's only one statement in Paris' testimony at the later trial that could even potentially be viewed as exculpatory. And that statement is Matt is a friend of the family. But he does not say and he did not testify that Matt was only there as a friend of the family. And it is possible, and we submit what happened here, as is clear from Thomas' testimony, that the defendant was at that meeting both as a friend of the family and as a member of this drug conspiracy. How do you explain the chart 473 where his name does not appear? Yes, Your Honor. That chart is Paris was asked to list who was a member of the conspiracy. Those are the people he listed. I think he was not. The 3500 material and, in fact, Paris' testimony later shows that he was not very involved with Davis. And that's actually to be expected. Roger Keyes Drug Organization was a huge, sprawling drug organization. And Paris and Davis were really portions of, they were really members of different subsets of this drug organization. They overlapped briefly, which is what is clear in the testimony and the 3500 material. But it's not clear, it's not surprising that when asked to initially list the members of this drug conspiracy that Paris did not include Davis. Although that's exculpatory, isn't it? Your Honor, that's why, in an abundance of caution, the government provided the chart that we had from Paris to defense counsel. We also thought that we provided every statement that Paris made about Davis in those meetings with the government. Every single one was provided to defense counsel well in advance of trial. And in addition, this statement that he made, that Paris made at the later trial, that Matt was there as a friend of the family, that had never been said to the government prior. If it had, we would have turned it over the same way that we turned over every other statement. Isn't that the definition of new evidence? No, Your Honor, because... Tell me why not. Because again, it's not inconsistent with what Paris is saying, what's had said before, which is that Davis was there, he was afraid of Davis, but Davis can also be there as a friend of the family. It was both. And this is why it's not new evidence. Because the defense had the fact that Paris was providing information to the government. They had the information that Paris had provided about that meeting. And so for those reasons, it's not newly discovered. Counsel, you just said that this was the first time he said that Davis was there, was a friend of the family, and you said if you knew it in advance, you would have turned it over. Isn't that the very definition of new evidence? That would have been Brady material that you would have turned over? Your Honor, we think it's not new evidence because it's not inconsistent with everything else that defense counsel, that Paris was saying. But even if the court were to find that it was new evidence, this fails, the motion for new trial fails on all of the other four prongs that the defendant is required to meet. In particular, this evidence was solely sought to be introduced as impeachment evidence to impeach Thomas. But again, it's not inconsistent with what Thomas was saying about that meeting. And the most important portion of that meeting is the portion that Paris, everyone agrees, even defense counsel agrees, Paris was not present for. That's the statement when Davis says that he threatens to kill Paris. And that is what the government was really arguing was important about that meeting. And nothing about Paris' statement is inconsistent with that testimony. In addition, the 3500 produced in advance of trial did note that Paris said that he was afraid of Davis, that he considered Davis, that he had heard that Davis was the gunman. And those things also are entirely consistent with what the testimony was at trial. And in addition, as this court has previously found, with respect to even if this meeting were somehow excluded from the government's case, there was ample other evidence of the defendant's participation in the drug conspiracy at issue. That evidence included testimony that the defendant was given 200 grams of crack to sell in 2010, testimony that the defendant stored kilograms of crack at his home in 2010. Paris would have nothing to say about those issues because Paris was incarcerated in 2010. There was testimony from Thomas about text messages using Davis' name as a threat to sell drugs faster. There was testimony about the defendant's participation in the 2010 drug-related murder of Terry Harrison. And we know that the jury hung on that count, but that testimony was properly before the jury. There was also testimony from the defendant himself about the defendant's own statements, showing a substantial knowledge of the inner workings of the drug conspiracy. So all of that also shows that this statement of Paris' at the later trial was not material because there was ample other evidence on which to sustain the conviction against Davis. And finally, in an abundance of caution, the government did produce Paris' 3500 to the substance of all of his statements about the defendant almost three weeks before trial. The defendant made no efforts to investigate further or call Paris as a witness. And if it is the defendant's contention that he was solely there as a friend of the family and that Paris would be able to say that, then that's within the defendant's own knowledge that there is a witness who could corroborate the defendant's account of what he was doing at that meeting at the John Adams houses. And so for all of those reasons, we think that the defendant did not meet the high burden, the extraordinary high burden, to show that a new trial was warranted and that this court should not find that Judge Forrest abused her discretion in rejecting the motion. I also want to correct one thing, which is that in Judge Forrest's order, she did in fact say that she had reviewed the 3500 material and that she considered that in denying the So if the Court has no further questions. Thank you. Mr. Mack, you have a minute for a rebuttal. Well, it's the first time the government has ever conceded that in fact, if there had been some disclosure, and again, I don't see how you could prepare for a trial and not ask if you're relying on a specific meeting as indicative as to get a full answer. If he was there as a friend of the family, it's not impeachment, it's directly in contradiction to the entire government theory of how the matter was resolved. Did you say, though, previously that Judge Forrest had not reviewed the 3500 materials? What I said, Your Honor, you can't tell. Did she review them as produced or reviewed as unredacted? The Court has reviewed the materials in her order, though. I understand that, Your Honor. I would say the materials are as they are in the appendix, as far as I'm concerned. I've never seen the full version, one way or the other. Maybe the Court did. If so, all I say is ambiguous. And from my point of view, I can't be certain whether she reviewed what was produced to us, which the Court has in the appendix, or not. And I'm just not willing to presume she looked at them. I mean, you can't tell from the opinion, one way or the other. So I'm suggesting this is if, in fact, there is an argument whether that he was there for reasons other than an enforcement. First of all, if he's an enforcer, what conspiracy are we talking about? The conspiracy that, at one time, the government just alluded to was a conspiracy involving Pudge being the provider. And, in fact, Your Honor, you asked that question at the last time as to what conspiracy are we talking about. And now we have some huge, overarching conspiracy, one way or the other, in which my client is supposed to be the enforcer. And basically, here is a witness, newly discovered to us, that no defense lawyer is going to call someone with all these allegations about murders and things of that nature, which he has no knowledge about, in which the jury hung and the issue has been dismissed. I'm hard-pressed, though, to follow that, so help me out. It's not that the witness is unknown to you, because his identity and his role in the scheme has been disclosed to you. Moreover, much of what you're talking about is information that your client would know, too. And so the ability of this new witness or this witness to corroborate what your client is telling him is something your client would know. I understood your earlier argument about how you wouldn't put him on because you saw there were too many risks, but I'm not sure that fits newly discovered evidence here. I mean, this is a witness who was known to you, and his knowledge of what your client's role was would be known to you and your client. When I say you, I mean your predecessor. Yeah. So help me out as to how even if the particular helpfulness of his testimony was only evident when, and this is your argument, the government disputes it, only evident when you learned that he was going to say that he was there in a family capacity, how any of that is new when you consider you knew the witness, your client knew what his role was, and you put it together? May I respond? Please, yes. If one is there as a defense lawyer, there is no possible way you could think if the government's major point, as it was, as I cited in my last time here on page 1800, 1801, is that this meeting is proof that he's an enforcer. You could not comprehend that the government would not ask that witness, Mr. Paris, why was he there? What was the reason that Matt Davis was there? And so when you scour the 3500 material and find absolutely nothing which has any implication, you're sitting there, and you know he's a cooperator, you know he's been talking to them about a variety of things, most of which are redacted, you're not going to assume that he remembers. In fact, he's . . . That doesn't seem obvious to me. Your client would know, I was there as a friend of the family. That was the only reason I was there. Now you know there's a witness there who, if that was the truth, would presumably be able to corroborate it. You get a bunch of reports to have that material unredacted. But, Your Honor, my response to that in the midst of trial is, and of course I wasn't there at the time, but I would say this, you're, as a defense lawyer, you're looking at an accomplice witness, 3500 material. Well, he's not the government's witness at their trial. I mean, they're not . . . He's gone because he's cumulative. That's what the defense lawyers were told. They expected him to know that. So, when you're sitting there in the midst of trial, you're saying, this guy, first of all, there's nothing in the 3500 which shows any favorable comment about our client, except he's a drunkard, and he gets thrown out of things, one way or the other, and there's some spurious talk about it. And when you say, you hear, we're not . . . government's not calling him, he's a cooperator accomplice, and there's nothing in the 3500, I don't care how confident you are as a defense lawyer listening to your client, you're going to take the risk of calling that person, so there's no . . . I'm not saying that. It's that there were intermediate steps that might have resulted in you learning this material that you didn't take. That's the problem. Not that you didn't call him, but that you took no steps to learn what he might know. Well, all I can say, Your Honor, under the circumstances, you're in the middle of trial, this is . . . you're working extremely hard, you'll hear that the government's not putting on a government witness statement. They list it on their government witness list because his testimony would be cumulative. There's not a single word in the 3500 material that sounds at all favorable, unless being . . . your client being called a drunkard. Are you going to, at that time, ask that the judge let you speak to the witness, or . . . we want more 3500 . . . At least you could have moved to unseal the portion of the 3500 material that was sealed. Your Honor, all I can say is hindsight is 20-20 on something like this. You're in the middle of a trial, you're being told . . . But as it turns out, as opposing counsel conceded, you wouldn't have found the sentence that he was a friend of the family because he said that at trial, and that was the first time the government heard it, they said. Your Honor, I'm not going to challenge . . . I don't know what's in the redacted 3500. I'm not suggesting that the government in this, say, heard favorable, but I've sat at too many interviews with agents on both sides, and basically, do you follow up? Do you . . . I don't know how you could possibly prepare that witness for this trial, the one that Mr. Davis is in, and not ask the question, hey, why was Matt Davis there? Why was he at this meeting? That's so important to our proof that he is an enforcer. You don't ask the witness what's there, and I'm assuming he wasn't asked. That's the only assumption I can make without the 3500 material. All right. We'll have to end there. Thank you very much. Thank you, Your Honor. Thank you both. We'll reserve decision.